The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
July 9, 2026

## 2026 COA 57

**No. 25CA0227, *Bechtholdt v. Extraction Oil & Gas, Inc.* — Real Property — Quiet Title; Civil Procedure — Judgment Upon Multiple Claims or Involving Multiple Parties**

*Keith v. Kinney*, 961 P.2d 516 (Colo. App. 1997), held that a quiet title claim that was not resolved by a district court as to all parties was improperly certified as final under C.R.C.P. 54(b).  This case presents a similar issue but one not addressed in *Kinney*: the propriety of a district court's certification and entry of final judgment resolving certain claims pursuant to Rule 54(b) while the plaintiff's quiet title claim remains unresolved.  Under the circumstances, a division of the court of appeals concludes that the district court erred by certifying and entering a final judgment on plaintiff's mineral trespass and unjust enrichment claims (as well as remedial requests for accounting and restitution) because resolution of those claims directly affects what relief, if any, plaintiff

or others alleging an interest in the subject property may obtain under plaintiff's quiet title claim. Likewise, the quiet title action must be resolved as to all parties because plaintiff's secondary claims — such as civil theft and fraud — are "incapable of final resolution" for purposes of Rule 54(b) certification, *Corinthian Hill Metro. Dist. v. Keen*, 812 P.2d 721, 722 (Colo. App. 1991), as plaintiff alleges entitlement to monies involving the same subject property at issue in the quiet title action. Based on the division's conclusions, the appeal is dismissed without prejudice.

Court of Appeals No. 25CA0227
Weld County District Court No. 23CV30558
Honorable Shannon D. Lyons, Judge

Robert D. Bechtholdt, as Personal Representative for the Estate of Betty J. Bechtholdt,

Plaintiff-Appellant,

v.

Extraction Oil & Gas, Inc., Ventana Property Owners' Association, Ronald P. Wagner, Tammie M. Wagner, Jon David Hergert, Hereti Corporation, Inc., TLC Directional Drilling, Inc., Matthew T. Hergert, Hergert Milling, Inc., Matthew T. Hergert Trust, and C. David Hergert,

Defendants-Appellees.

## APPEAL DISMISSED

Division III
Opinion by JUDGE JOHNSON
Martinez* and Berger*, JJ., concur

Announced July 9, 2026

Practus, LLP, John Cardinal Parks, Denver, Colorado, for Plaintiff-Appellant

Davis Graham & Stubbs LLP, Jennifer Allen, Maxwell Hamilton, Denver, Colorado, for Defendant-Appellee Extraction Oil & Gas, Inc.

Witwer, Oldenburg, Barry & Groom, LLP, Patrick M. Groom, Francis L. Kailey, Greeley, Colorado, for Defendant-Appellee Ventana Property Owners' Association

Fisherbroyles, LLP, Frank Porada, Denver, Colorado, for Defendants-Appellees Ronald P. Wagner and Tammie M. Wagner

Garnett Powell Maximon Barlow & Farbes, Stanley L. Garnett, Robert L. Barlow, David Chipman, Kristin L. Arthur, and Kate Leisner, Denver, Colorado, for Defendants-Appellees Jon David Hergert, Hereti Corporation, Inc., TLC Directional Drilling, Inc., Matthew T. Hergert, and Matthew T. Hergert Trust

Keller Law, LLC, Jenna H. Keller, Jacy T. Rock, Teresa M. Abel, Craig, Colorado, for Defendants-Appellees Hergert Milling, Inc. and C. David Hergert

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    This case requires us to address an issue similar to the one decided in *Keith v. Kinney*, 961 P.2d 516, 519 (Colo. App. 1997). That case held that a quiet title action is not an appropriate claim to be certified as final under C.R.C.P. 54(b) when the district court has not resolved all the parties' rights to the subject property. *Kinney* dealt solely with a quiet title claim. This case presents a situation in which the district court certified and entered a final judgment resolving other claims (or requests for remedial relief) pursuant to Rule 54(b) but left unresolved the quiet title claim. For many of the same reasons *Kinney* determined that Rule 54(b) certification was inappropriate there, we conclude that the unresolved quiet title claim and the other claims (or requests for relief) in this litigation are not separable from the certified claims.

¶ 2     Plaintiff, Betty J. Bechtholdt (Betty),[1] through Robert D.

Bechtholdt (Robert),[2] as personal representative for her estate,

appeals the district court's dismissal of the estate's mineral

trespass and unjust enrichment claims and requests for an

accounting and for restitution against defendants Extraction Oil &

Gas, Inc. (Extraction), Ventana Property Owners' Association

(Ventana POA), and lot owners Tammie M. Wagner and Ronald P.

Wagner (the Wagners), based on the court's certification of its order

on those claims under Rule 54(b).  Betty also appeals the district

court's denial of her motion to reconsider.

¶ 3     Given the complex title history of the property — much of it

disputed by the parties — we conclude that the district court erred

by certifying its order as final and appealable under Rule 54(b).

This is because many of the estate's claims addressed in the

_____

[1] At the time this appeal was filed, Betty was alive.  During this
appeal, Betty died and Robert filed a motion to substitute Betty's
estate as the real party in interest.  Even though Robert is now the
real party in interest, we refer to Betty throughout, as it was her
arguments that sought and obtained C.R.C.P. 54(b) certification of
the orders at issue.
[2] We refer to individuals by their first names in this opinion because
many of the parties share the same last names.  We intend no
disrespect in doing so.

certification are inextricably linked with pending claims not resolved by the court. As a result, we conclude that the court's certification order does not satisfy the first two of the factors from *Harding Glass Co. v. Jones*, 640 P.2d 1123, 1125 n.2 (Colo. 1982) — that is, the order does not dispose of an entire claim for relief, and the decisions may not be final as to the certified claims. Because of our disposition, we need not address the third *Harding Glass* factor.

¶ 4 Therefore, we dismiss the appeal without prejudice for lack of jurisdiction and do not address any other arguments raised. *See Goodall v. Gentry-Cunningham*, 2024 CO 52, ¶¶ 11-12.

## I. Background

¶ 5 Like many property disputes, this case involves a long and winding history. Because we are not resolving any issues in this appeal on the merits, this background is solely for purposes of our Rule 54(b) analysis. The district court is not bound by any of our statements of the facts. Although there are four parcels of land discussed and the surface and mineral rights were separately titled, the parties' dispute largely centers around the mineral rights being exercised underlying what we identify as Parcel 4.

¶ 6    Dave Hergert (Dave) and Ida Hergert (Ida) owned a family farm spanning four parcels of land in Weld County.  In December 1979, Dave and Ida created four limited partnerships in which they served as general partners for four entities, and each of their four children — Kenneth Hergert, Clarence Hergert (Clarence), Betty, and Loretta Hergert (Loretta) — was identified as a limited partner in one of the four entities.  Loretta was the limited partner for Hergert Limited Partnership No. 4 (Partnership 4).[3]

¶ 7    In March 1980, Dave and Ida severed the surface and mineral estates of the four parcels, with four separate deeds recorded with the Weld County Clerk and Recorder, conveying the surface estate in each parcel to one of the four limited partnerships.  Parcel 4's surface estate was conveyed to Partnership 4.

¶ 8    The mineral estate (Mineral Estate) underlying the four parcels was conveyed pursuant to a mineral deed, also recorded with the Weld County Clerk and Recorder.  Dave and Ida conveyed a 25% interest in the Mineral Estate to each of their four children.  Based

---

[3] Because the other limited partnerships are not relevant to our analysis, we do not refer to them.

on the property title history, it does not appear that the Mineral Estate was divided into separate parcels like the surface rights.

¶ 9 Loretta died in 1990. In the six years following her death, Loretta's 25% interest in the Mineral Estate was re-conveyed several times in various deeds and settlement agreements, some in part, dealing with the heir to whom Loretta bequeathed her interest in the Mineral Estate. Her limited partnership interest in Partnership 4 was eventually conveyed to Betty.

¶ 10 In 1996, Partnership 4 was dissolved and surface rights to Parcel 4 were conveyed to Betty, among others.

¶ 11 In 2000, the owners of Parcel 4 conveyed it (2000 Warranty Deed) to Ventana Holdings, LLC f/k/a Ventana Development, LLC (Ventana Holdings). Ventana Holdings developed Parcel 4, divided it into lots, and sold the lots to dozens of buyers (lot owners), who are subject to Ventana POA.[4] The lot owners entered into oil and gas leases with Extraction, which began extracting minerals from Parcel 4. Although Extraction began to extract minerals from Parcel

---

[4] Ventana Holdings was a party to this lawsuit but was dismissed pursuant to a stipulated dismissal.

4, Betty contends that she did not transfer any of her mineral rights underlying Parcel 4 as part of the 2000 Warranty Deed.

¶ 12     Years later, in 2013, Clarence discovered that the conveyances involving Loretta's interests in the Mineral Estate were allegedly ineffective because Loretta's mineral interests were not transferred as part of a probate proceeding.  Clarence, as personal representative for Loretta, opened an ancillary probate proceeding to address Loretta's outstanding interest in the Mineral Estate and entered into another settlement agreement with Loretta's heir. Betty alleged that Loretta's interest in the Mineral Estate was conveyed to her as part of that probate proceeding.  This meant, according to Betty, that she owned a larger interest in the Mineral Estate than just her original 25% interest.[5]  Betty further alleged that her Mineral Estate interests were then fraudulently conveyed to Clarence's children, Jon David Hergert (Jon) and Matthew T. Hergert (Matthew).[6]

---

[5] It is not entirely clear from the record the actual percentage of the Mineral Estate Betty alleged she owned in 2013.
[6] Matthew and Jon transferred their purported interests in the Mineral Estate to other entities, but those entities are not relevant to our analysis.

6

¶ 13    This convoluted property history gives rise to the parties' central dispute: whether the 2000 Warranty Deed — in which Betty and the other owners conveyed Parcel 4 to Ventana Holdings — included only the owners' surface rights or also conveyed the mineral rights underlying Parcel 4.

¶ 14    Based on all this, Betty filed this lawsuit asserting quiet title and declaratory judgment claims, as well as a request for accounting against all defendants, which included Clarence, Jon (and the entity that holds his interest), Matthew (and the entity that holds his interest), Extraction, Ventana Holdings, Ventana POA, the lot owners, and various other entities and individuals associated with oil and gas production on Parcel 4.[7]  Betty also asserted claims as follows:

- two counts of fraud against Clarence, Jon (and the entity that holds his interest), and Matthew (and the entity that holds his interest);

- civil theft against Clarence;

---

[7] Given the number of named defendants, we list only those relevant to our C.R.C.P. 54(b) analysis.

- disgorgement, unjust enrichment, and a request for the appointment of a receiver against Jon and Matthew and the entities that hold their interests;

- unjust enrichment against the lot owners, which includes Ventana POA; and

- mineral trespass and a request for restitution against Extraction.

¶ 15    Extraction filed a partial motion to dismiss Betty's second amended complaint, seeking dismissal of all claims asserted against it.

¶ 16    The district court entered an order on May 8, 2025 (May 8 order), dismissing certain claims against Extraction, Ventana POA, and the Wagners.  After denying Betty's request for reconsideration on July 24 (July 24 order), Betty requested, and the court certified, the two orders as final under Rule 54(b).

¶ 17    Betty filed this appeal.  Clarence, Jon, and Matthew sought to be added as appellees and asked to file a brief so that they could assert arguments against Rule 54(b) certification.  Over Betty's objections, a motions division of this court authorized those individuals to be added as parties and ordered them to file a brief.

## II. Standard of Review and Applicable Law

¶ 18 "We must determine independently our jurisdiction over an appeal . . . ." *Allison v. Engel*, 2017 COA 43, ¶ 22, *overruled on other grounds by*, *Wolf v. Brenneman*, 2024 CO 31, ¶ 18. This court's jurisdiction is conferred by statute, and generally we may only review appeals from final judgments. *Wilson v. Kennedy*, 2020 COA 122, ¶¶ 5-7. A final judgment "ends the particular action" and leaves nothing for the district court to do "in order to completely determine the rights of the parties involved in the proceeding." *Harding Glass*, 640 P.2d at 1125 n.2 (quoting *D.H. v. People*, 561 P.2d 5, 6 (Colo. 1977)). And generally, "an entire case must be decided before any ruling in that case can be appealed." *Wilson*, ¶ 8 (quoting *People v. G.S.*, 2018 CO 31, ¶ 37).

¶ 19 C.R.C.P. 54(b) is an exception to the general rule and provides that, when there are multiple claims for relief or multiple parties are involved, the district court "may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

¶ 20     A district court's certification under C.R.C.P. 54(b) is proper only if "(1) the decision certified is a ruling on an entire claim for relief; (2) the decision is final in that it ultimately disposes of the individual claim; and (3) the district court determines expressly that there is no just reason for delay in entering a final judgment on the claim." *Allison*, ¶ 24; *see Harding Glass*, 640 P.2d at 1125.

¶ 21     We review de novo whether the Rule 54(b) certification involved an entire claim for relief and whether the ruling is final and disposes of the claim.[8] *Harding Glass*, 640 P.2d at 1125.

### III.     Analysis

¶ 22     The court's Rule 54(b) certification was improper because the rulings in the May 8 and July 24 orders are inextricably linked to other pending claims.

### A.     The District Court Rulings

¶ 23     In the May 8 order, the district court held that the 2000 Warranty Deed's language was unambiguous and that Betty and the other owners conveyed the mineral interests underlying Parcel 4 to Ventana Holdings.  Because of the district court's interpretation,

---

[8] The third factor —that there is no just reason for delay — is not an issue in this appeal.

it ruled in favor of Extraction, Ventana POA, and the Wagners and dismissed (1) the mineral trespass claim, along with Betty's requests for restitution and an accounting against Extraction; and (2) the unjust enrichment claim, as well as request for accounting, against the Wagners. The court also dismissed all claims against Ventana POA under C.R.C.P. 12(b)(5), reasoning that Betty had not alleged the entity "holds any mineral interests in Parcel 4, nor that [the entity] has received any royalty payments from the development of those mineral interests by Extraction."

¶ 24 In that same order, however, the district court did *not* dismiss Betty's quiet title and declaratory judgment claims against Extraction and the Wagners because the court "may need to determine the scope of the mineral rights conveyed by" Betty "based on the other actions, agreements, and conveyances detailed in [the] *Second Amended Complaint*." In the July 24 order, the court relied on the same interpretation of the 2000 Warranty Deed, finding that Betty "failed to establish" that she was "entitled to reconsideration."

¶ 25 In Betty's request for Rule 54(b) certification, she argued that the mineral trespass and restitution claims against Extraction "constitute[d] a ruling on an entire claim for relief." Likewise, she

argued that, even though her unjust enrichment claims were only dismissed against Ventana POA and the Wagners, "the Court's ruling was not unique to them," as its finding that "'[Betty] did not reserve any mineral rights to Parcel 4 in her favor in the 2000 Deed,' equally applies to the claims" asserted against the other lot owners.

¶ 26    In opposition to Betty's request for certification, Clarence, Jon, and Matthew argued that, although the request appeared "simple" and "persuasive," the court's construction of the 2000 Warranty Deed involves only "a single *part* of [Betty's] chain of mineral title, even though there is much more of that chain of title at issue." Clarence, Jon, and Matthew further argued that, even though mineral trespass and unjust enrichment might be "distinct claims" from the quiet title action, "they only serve as a fig leaf to cover the real issue: the chain of mineral title" to Parcel 4.

### B.    Entire Claim and Finality

¶ 27    On appeal, Extraction, Ventana POA, and the Wagners[9] take no position on whether the district court properly certified the May

---

[9] Ventana POA and the Wagners filed answer briefs that joined fully in the arguments raised by Extraction.

8 and July 24 orders under Rule 54(b). Instead, they argue that we should affirm the district court orders because any person conveying real property through a deed is presumed to have conveyed the whole of the property right unless a portion was expressly reserved.

¶ 28    We decline to do so because, as we discuss below, we agree with Clarence, Jon, and Matthew that the district court improperly certified its orders as final and appealable under Rule 54(b). Specifically, the court's rulings, which we acknowledge resolved entire claims for relief (or requests for relief as part of those claims) as framed in the complaint, do not resolve a separate claim within the meaning of Rule 54(b). Although the definition of a separate claim may be elusive, it includes the resolution of a single legal right. *Harding Glass*, 640 P.2d 1126. The rights involved here, similar to those in *Kinney*, are interests in real property. And Betty's legal interest in the claims certified by the district court is not separate and distinct from her legal interests in other pending claims, including her quiet title claim, meaning an entire claim for relief within the meaning of Rule 54(b) is not fully resolved because

13

the legal interests in those claims are inextricably linked with other pending claims that remain unresolved.

¶ 29     Clarence, Jon, and Matthew rely on *Kinney*, 961 P.2d at 519, contending that a quiet title action is inappropriate for Rule 54(b) certification when all parties' rights have not been fully adjudicated. *Kinney* concluded that, "by its nature, the action to quiet title here must address the interests of all of the parties" in the subject property and, "therefore, a limited resolution of those interests is not susceptible to certification under C.R.C.P. 54(b)." *Id.*

¶ 30     Like in *Kinney*, the primary issue related to each of Betty's claims (or requests for relief) is resolution of the chain of title to the mineral rights underlying Parcel 4. As Clarence, Jon, and Matthew argued below and on appeal, although mineral trespass and unjust enrichment are distinct claims from a quiet title action, those claims depend on resolution of the court's adjudicating all parties' interests to the mineral rights underlying Parcel 4. By only looking at the 2000 Warranty Deed in isolation when ruling on those claims, the district court failed to consider what rights Betty (or other family members) had or did not have at the time of the 2000

conveyance.[10]   Some questions that appear unresolved by the court's May 8 and July 24 orders include, but are not limited to the following:

- What effect, if any, did the settlement agreements and deeds concerning Loretta's heir before 2000 have on the mineral rights underlying Parcel 4?

- If a deed in effect prior to 2000 was deemed invalid by an ancillary probate proceeding that occurred after the 2000 Warranty Deed, what effect, if any, did that proceeding have on the ownership of the mineral rights and what Betty could convey as part of the 2000 Warranty Deed?

- Could Betty convey her percentage of the Mineral Estate — whatever amount that might have been given as part of the ancillary probate proceedings — underlying only Parcel 4, or if the district court's interpretation of the 2000 Warranty Deed is accurate, did Betty convey her percentage of the Mineral Estate as it relates to all four parcels of land?

---

[10] We acknowledge that the court looked at other deeds as part of its order of dismissal, but it determined only the rights of certain parties — not all parties — with its interpretation of the 2000 Warranty Deed.

¶ 31 We also agree with Clarence, Jon, and Matthew that, given the complex chain of title for the subject property, the court's interpretation of the 2000 Warranty Deed may be necessary to adjudicate or resolve the mineral trespass and unjust enrichment claims, and it may inform how the court addresses the requests for restitution and accounting, all dismissed by the court. But interpretation of the 2000 Warranty Deed is a single issue of law that must be decided in context with the entire chain of title. In other words, mineral trespass, unjust enrichment, and the request for restitution and accounting are inextricably intertwined with adjudicating the rights of all parties who claim an interest in Parcel 4 as part of the quiet title action.

¶ 32 Indeed, the court's own orders, which did not dismiss the quiet title or declaratory judgment claims against the defendants (except for Ventana POA), recognized that the court will likely need to adjudicate the percentages each party might own in the mineral rights underlying Parcel 4. This is because, we assume, the court recognized that the Mineral Estate underlies the entire four parcels, so any person with an interest in the Mineral Estate ostensibly owns a percentage of the mineral rights underlying Parcel 4. In

other words, adjudicating the parties' rights to the mineral rights underlying Parcel 4 must be done first, or concurrently with the quiet title action and the other claims, because of the complex chain of title and Loretta's probate proceedings.

¶ 33 Clarence, Jon, and Matthew also argue that the court's interpretation of the 2000 Warranty Deed essentially dismissed (or substantially limited) any relief they may be entitled to under the quiet title action. As we read their answer to Betty's complaint, they assert that Betty did not have any interest of record in the portion of the Mineral Estate at issue, arguably meaning Betty could not have conveyed any interest in the Mineral Estate as part of the 2000 Warranty Deed, which if true, might invalidate the 2000 Warranty Deed and entitle them to affirmative relief, such as an increase of their percentages in the Mineral Estate. *See Kinney*, 961 P.2d at 519 (In a quiet title action, "[a] complete adjudication was to address all competing claims of the parties because a defendant could obtain affirmative relief even if a request for such relief was not presented in the form of a counterclaim.").

¶ 34 Because there are pending claims that are dependent on underlying matters that have not been resolved by the court,

certification under Rule 54(b) was improper. *See Corinthian Hill Metro. Dist. v. Keen*, 812 P.2d 721, 722 (Colo. App. 1991) ("Full adjudication of rights and liabilities of parties regarding an appealed claim is required before C.R.C.P. 54(b) certification is proper.").

¶ 35 Nonetheless, Betty contends that *Corporon v. Safeway Stores, Inc.*, 708 P.2d 1385, 1388-89 (Colo. App. 1985), and *Colorado Community Bank v. Hoffman*, 2013 COA 146, ¶ 23, support the court's Rule 54(b) certification because those divisions reviewed orders involving claims that were separate from the quiet title action. But those cases are distinguishable.

¶ 36 *Corporon*, 708 P.2d at 1389, dealt with slander, defamation, wrongful termination, tortious interference with contract, and outrageous conduct claims. Although the division noted that slander and defamation claims are distinct from a quiet title action, *Corporon* did not involve a quiet title claim. The division adopted a "pragmatic test" for determining whether "multiple claims" are separate for purposes of Rule 54(b): Certification is proper if "a claimant pleads claims for which his possible recoveries are more

than one and when a judgment rendered on one of his claims would not bar a judgment on his other claim(s)." *Id.*

¶ 37 Under that test, the division determined that the defamation order was properly certified because it "would not bar [the plaintiff] from receiving a verdict on the republication claim since each defamatory statement upon a separate publication is a separate claim," nor would it bar recovery on the plaintiff's other claims "because each is a complete wrong standing alone." *Id.* As we discussed above, without a determination of all the parties' rights in the quiet title action, it is not clear whether Betty is barred from recovery on her other claims for relief.

¶ 38 *Hoffman*, ¶ 25, dealt with property interests in a business, not real property. Even so, the division there determined that the sale orders requested by the appointed receiver and adopted by the court were properly certified under Rule 54(b) because the orders "disposed of *all* of the subsidiaries' interests in certain assets, not just a portion of those interests" and "the operative facts giving rise to the sale orders, namely, that the subsidiaries were deadlocked, insolvent, and unable to continue operations, were distinct from the facts underlying the other claims and counterclaims in the case."

*Id.* Because Betty's claims all deal with the same parcel of land and mineral rights, the court cannot, based on how Betty pled her claims, adjudicate a portion of this lawsuit without adjudicating the whole, making this case distinct from *Hoffman.*

¶ 39 As an extension of *Kinney*, we conclude that when a plaintiff's claims directly impact what relief, if any, the plaintiff and others claiming an interest in the subject property may obtain as part of a quiet title action, certification under Rule 54(b) of those claims, such as mineral trespass and unjust enrichment, as well as requests for accounting and restitution dealing with the same property, is improper. Likewise, when the plaintiff's secondary claims — such as civil theft or fraud — relate to monies the plaintiff is purportedly owed involving an alleged property interest in the quiet title claim, the quiet title claim must be resolved as to all parties and the secondary claims in this circumstance are "incapable of final resolution" for purposes of Rule 54(b) certification. *Corinthian*, 812 P.2d at 722; *see Kinney*, 961 P.2d at 519. Thus, the district court erred by certifying the May 8 and July 24 orders as final under Rule 54(b) because resolution of the claims

against defendants are "subject to a final determination of" the quiet title claim. *Corinthian*, 812 P.2d at 722.

## IV. Conclusion

¶ 40    The appeal is dismissed without prejudice.

JUSTICE MARTINEZ and JUDGE BERGER concur.